Kervin D. **BURNS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. **14–96–00244–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 18, 1997.

Mary B. Hennessy, Brenham, for appellant.

Joan E. Scroggins, Caldwell, for appellee.

Before MURPHY, C.J., and HUDSON, J., and ALFONSO CHAPA, Senior Chief Justice.

## OPINION

ALFONSO CHAPA, Senior Chief Justice.

Appellant, Kervin D. Burns, appeals a conviction for the offense of bail jumping and failure to appear, wherein he received punishment of ten (10) years confinement.

The issues are (1) whether the trial court erred in denying appellant's Batson challenge; (2) whether the evidence is legally insufficient to support the conviction because there is no evidence that appellant intentionally failed to appear and no evidence to establish that appellant was charged with a felony at the time the bail bond in question was executed; and (3) whether the evidence is factually insufficient to support the conviction.

## POINT OF ERROR ONE

Appellant's Batson challenge argues that the prosecution's peremptory challenges to two African–American venire persons, Walter Nix and Edward Rogers, were racially motivated.

## BATSON CHALLENGE

The United States Supreme Court has declared that racially motivated use of peremptory challenges by the prosecution violates due process of law and requires reversal. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ In 1987, the Texas Court of Criminal Appeals established the trial procedure to be followed in a Batson challenge. *Keeton v. State,* 724 S.W.2d 58 (Tex.Crim.App.1987). Once the defendant establishes a prima facie case of a racially motivated use of a peremptory challenge by the prosecution, the burden shifts to the State to provide a racially neutral explanation for the challenges. The trial court then reviews the evidence and rules on the Batson challenge. *Keeton,* 749 S.W.2d at 867. The Court of Criminal Appeals adopted its own appellate standard of review for a Batson challenge after considering the "clearly erroneous" and "abuse of discretion" standards. *Id.* at 870. The court recognized the "clearly erroneous" standard as one which would call for reversal *only* if the appellate court found the trial court's determination the prosecution challenges were not motivated by intentional discrimination was erroneous. *Id.* at 870. Rejecting the "clearly erroneous" and "abuse of discretion" standards, the Court of Criminal Appeals adopted a standard in which the appellate court would consider the evidence in the light most favorable to the trial judge's rulings. If those rulings were supported by the record, the reviewing court would leave the trial court's findings undisturbed. *Id.* at 870.

In 1989, the court changed its mind about standards of review for Batson challenges on rehearing and issued a plurality opinion. *Whitsey v. State,* 796 S.W.2d 707 (Tex.Crim. App.1989). The plurality opinion adopted the "clearly erroneous" standard, concluding that they were "merely extending the 'supported by the record' standard to its ultimate and logical conclusion." *Id.* at 723–24.

## ANALYSIS

■ At the beginning of voir dire, the prosecution asked the jury panel if anyone knew the appellant or his family. Edward Rogers volunteered he had known appellant's mother all his life. The record reflects that appellant's mother was a defense witness in the case. Walter Nix indicated that he had dealings with appellants' family in his capacity as a minister and resided near them. The prosecution struck both Edward Rogers and Walter Nix peremptorily.

The trial court excused the members of the jury before they were sworn in and heard the defense's Batson challenge. The entire Batson hearing consists of the following:

THE COURT: Go ahead, Ms. Hennessy, outside the presence of the jury.

MS. HENNESSY [defense]: Your Honor, I have made a motion—a Batson motion.

Our position is that the state's use of peremptory strikes was racially motivated. Venire Person No. 17, Walter Nix and Venire Person no. 26, Edward Rogers were the only black members of the panel who were in the first 32 and they were both struck by the state. My client Mr. Burns is an African American and for that reason we make this motion that the jury be quashed.

THE COURT: Okey, Ms. Scroggins, do you want to respond as to Mr. Nix and Mr. Rogers?

MS. SCROGGINS [state]: Yes, sir, I do not need to be sworn in, do I?

THE COURT: No.

MS. SCROGGINS: With regard to Walter Nix, he responded that not only did he know the family but that was a minister and that he dealt with the family with regard to the church. That was the reason that we struck Mr. Nix.

With regard to Mr. Rogers, he had stated that he had known the defendant's mother all of her life, was—had known her all of her life and that was the reason that we struck Mr. Rogers.

THE COURT: And is the mother of Mr. Burns going to be testifying?

MS. SCROGGINS: She was in here as a witness, yes, sir.

THE COURT: The Court will deny the Batson motion. The jury will be sworn as selected.

We'll bring them back in, Mr. Kenner.

The record reflects appellant raised a prima face case that the Prosecution's two peremptory challenges were racially motivated. The State responded with racially neutral explanations. Mr. Nix was struck because he knew appellant and his family and had dealt with them as a minister. Mr. Rogers was struck because he had known appellant's mother all his life, and she was scheduled to be a defense witness. Appellant did not cross-examine the prosecutor, nor did he challenge the prosecution's explanation for the strikes. Since the record substantiates the uncontradicted, racially neutral explanations of the prosecution, we fail to see how the trial court erred in denying appellant's motion either under the "clearly erroneous" or "sustained by the record" standards of review. We reject appellant's first point of error.

## THE RECORD

Bailbondsman John R. Townslee testified that in August, 1995, he bailed out appellant on the felony offense of attempted burglary of a building. In accordance with his procedure in such cases, Townslee gave appellant his card and asked him to call in every Monday. Appellant never called. The bondsman also testified he was notified when the case was set for October 16, 1995, and obtained a continuance until October 30, 1995. Townslee sent appellant a notice letter to the address furnished by appellant on the bond form. The letter was not returned, but appellant failed to appear at the October 30, 1995, setting. The bond was forfeited, and a warrant issued for appellant's arrest. Townslee was unable to contact appellant by telephone because the number appellant gave him had been disconnected. When appellant's mother contacted Townslee several days later, and he told her to have the accused appear. Appellant was arrested a short time later.

District Court Bailiff Charles Kenner testified appellant was not present at the court on the scheduled appearance date, and he signed a certificate reflecting appellant's failure to appear. The certificate was admitted into evidence as Exhibit 3.

Kenneth S. Beiderman testified that he approved appellant's bail bond for the felony of attempted burglary of a building on behalf of the Burleson County Sheriff's Department. Beiderman had previously worked for Towsley and substantiated Towsley's bonding procedures.

The bail bond in question was admitted without objection and reflects appellant was required to appear for the offense of attempted burglary of a building. The words *Felony* and *District* are circled on the face of the bond, indicating that appellant was bonded for a felony offense. The face of the bond also shows appellant was to appear *instanter* before the District Court of Burleson County, Texas.

Appellant's mother, Everline Reliford, testified she was involved in arranging the bail bond in question. She averred the address and telephone number provided Townslee were correct, and that, even though they moved their mobile home, the mailing address remained the same. She also claimed she never received the letter from Townslee, but admitted that she had called the bondsman after appellant's appearance date. Finally, Mrs. Reliford testified appellant would never fail to appear if he knew when to be in court.

In rebuttal, the State presented Richard Price, Assistant County Attorney for Brazos County, who testified that he had personal

knowledge that appellant failed to appear a number of times in matters pending in Brazos County.

## POINTS OF ERROR TWO, THREE, FOUR

Appellant's second and third points of error complain there is legally insufficient evidence to support the conviction. Appellant argues there is *no* evidence he intentionally failed to appear and *no* evidence he was charged with a felony at the time the bail bond was executed.

Appellant's last point of error contends there is factually insufficient evidence to support the conviction.

## LEGAL AND FACTUAL SUFFICIENCY OF EVIDENCE

■ In 1979, the United States Supreme Court established a standard of review for sufficiency of the evidence in noncapital criminal cases as "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307 at 319, 99 S.Ct. 2781 at 2789, 61 L.Ed.2d 560 (1979). Thereafter, courts of appeal typically conducted the *Jackson* review when defendants attacked the sufficiency of the evidence, without regard to whether the attack was based on legal or factual sufficiency grounds.

In 1992, the Austin Court of Appeals concluded that the *Jackson* standard of review only applied to *legal* sufficiency complaints because it was directed to the constitutional adequacy of the evidence, and did not in any way prohibit the states from establishing their own standard of review for *factual* sufficiency challenges. *Stone v. State,* 823 S.W.2d 375, 379 (Tex.App.—Austin, 1992). The court adopted and announced the following standard of review for *factual sufficiency* issues and the manner in which it should be implemented:

> When a court of appeals conducts a factual-sufficiency review, the court does not ask if any rational jury, *after viewing the evidence in the light most favorable to the prosecution,* could have found the essential

elements of the crime beyond a reasonable doubt. Factual-sufficiency review begins with the presumption that the evidence supporting the jury's verdict was legally sufficient, i.e., *constitutionally* sufficient for the purposes of the Due Process Clause of the Fourteenth Amendment. Rather, the court views all the evidence without the prism of 'in the light most favorable to the prosecution.' Because the court is not bound to view the evidence in the light most favorable to the prosecution, it may consider the testimony of defense witnesses and the existence of alternative hypotheses. The court should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (1986): *In re King's Estate,* 150 Tex., 662, 244 S.W.2d 660, 661 (1951). Before reversing a conviction on this basis, the court should detail the evidence and clearly state why the jury's verdict is so contrary to the overwhelming weight of the evidence as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias; and further state how the evidence contrary to the jury's verdict overwhelmingly outweighs the evidence that supports the verdict. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986), *cited in Meraz [v. State],* 785 S.W.2d [146] at 154 n. 2 [(Tex.Cr.App. 1990)].

*Id.* at 381.

In 1996, the Texas Court of Criminal Appeals agreed that the *Jackson* standard of review is only applicable to a legal sufficiency challenge. *Clewis v. State,* 922 S.W.2d 126, 132 (Tex.Crim.App.1996). The court declared that "[a]fter a court of appeals has determined that the evidence is legally sufficient under *Jackson* to support the verdict, it may proceed further to review factual sufficiency if it is properly raised." *Id.* at 133. The court adopted the *Stone* factual sufficiency standard of review, holding that if an appellate court sustains a legal sufficiency challenge, it should render a judgment of acquittal, but if it sustains a factual sufficiency challenge, it should only reverse and remand for a new trial. *Id.* at 133.

## BAIL JUMPING AND FAILURE TO APPEAR

The Texas Penal Code defines bail jumping and failure to appeal as follows: "A person lawfully released from custody, with or without bail, on condition that he subsequently appear commits an offense if he intentionally or knowingly fails to appear in accordance with the terms of his release." TEX. PEN.CODE ANN. § 38.10. The code further provides that an offense under this section is a Class A misdemeanor unless the offense for which the actor's appearance was required is classified as a felony, in which case the offense is elevated to a felony of the third degree. *Id.*

The Texas Penal Code also defines burglary in section 30.02 as: "A person commits the offense if, without the effective consent of the owner, he enters a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft." TEX. PEN.CODE ANN. § 30.02. The offense is a state jail felony if committed in a building other than a habitation. *Id.*

Sec. 15.01 of the Penal Code describes the offense of criminal attempt and provides that "[a] person commits the offense, if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." The offense is one category lower than the offense attempted, and if the offense attempted is a state jail felony, the attempted offense is a Class A misdemeanor.

The punishment for a Class A Misdemeanor is (1) a fine not to exceed $4,000, (2) confinement in jail for a term not to exceed one year, or (3) both such fine and confinement. TEX. PEN.CODE ANN. § 12.21.

■ An individual commits the offense of failure to appear when, after having been lawfully released on bail, on condition that he subsequently appear, intentionally or knowingly fails to appear in accordance with the terms of his release. *Yarbrough v. State,* 703 S.W.2d 645, 647 (Tex.Crim.App.1985). A bail bond requiring an accused to appear *instanter* gives proper notice to the defendant when he is to appear. Unless appellant sufficiently establishes a reasonable excuse for his failure, the bond itself is sufficient to prove that appellant intentionally and knowingly failed to appear in accordance with the terms of the release. *Euziere v. State,* 648 S.W.2d 700, 702 (Tex.Crim.App.1983).

## ANALYSIS

### LEGAL SUFFICIENCY

In his second and third points of error, appellant contends there is legally insufficient evidence to support his conviction because there is *no* evidence he intentionally failed to appear and *no* evidence he was charged with a felony at the time the bond was executed. Because the challenge is as to legal sufficiency, we must be guided by the *Jackson* standard of review, "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia* 443 U.S. at 319, 99 S.Ct. at 2789; *Clewis,* 922 S.W.2d at 132.

■ The evidence reflects that appellant's bond required him to report to the District Court of Burleson County *instanter.* On the day appellant was bonded, the bondsman gave appellant a business card with his telephone number and specifically instructed appellant to call him every Monday. Appellant did not contact the bondsman at any time. The bondsman mailed a letter to the address given him by appellant notifying appellant of the trial date. The letter was never returned. All efforts by the bondsman to contact appellant at the telephone number given to him by appellant were in vain. The telephone had been disconnected. Finally, the appellant failed to appear at his scheduled court date. We find legally sufficient evidence of appellant's intentional and knowing failure to appear. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789.

■ There is also legally sufficient evidence in the record to sustain the State's allegation that the bond was issued to insure that appellant would appear to be tried for a *felony* offense. The face of the bond indicates appellant was charged with a "felony" and that he was required to appear before

the "District" Court of Burleson County. Finally, Townslee and Beiderman testified that the offense appellant was required to appear for was a felony. The second and third points of error are overruled.

## ANALYSIS

### FACTUAL SUFFICIENCY

■ Appellant's final point of error contends that the evidence is *factually* insufficient to sustain the conviction. When reviewing a factual sufficiency point, we are required to "view all the evidence without the prism of 'in the light most favorable to the prosecution' [and ] set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Stone*, 823 S.W.2d at 381; *Clewis*, 922 S.W.2d at 133.

■ Applying the above standard, we agree the evidence is factually insufficient to sustain appellant's conviction. The State failed to provide evidence factually sufficient to establish that the offense for which appellant was required to appear was a felony.

Appellant was tried for bail jumping and failure to appear, a violation of section 38.10 of the Texas Penal Code. Section 38.10 provides that the offense is a Class A Misdemeanor *unless the offense for which the actor's appearance was required is "classified" as a felony,* then bail jumping is elevated from a misdemeanor to a third degree felony.

Appellant was sentenced to 10 years confinement. The maximum sentence for a Class A Misdemeanor is a $4,000.00 fine and confinement in jail for a term not to exceed one year; appellant was obviously convicted of bail jumping and failure to appear for a felony. For appellant's conviction to stand, the facts must sufficiently establish that appellant was required to appear for a felony offense.

Although "felony" was circled on the bond, the form clearly states that the felony for which appellant was required to appear was "Attempted Burglary of a Building." While the State's two witnesses testified that, in their opinion, the offense for which appellant was charged was a felony, they also testified that appellant was required to appear for the offense of attempted burglary of a building, a Class A Misdemeanor. Appellant argues the conviction cannot factually stand. The State relies on the bond bearing the circled word "felony" and testimony of lay witnesses that the offense of attempted burglary of a building is a felony. We are compelled to agree with appellant.

■ The bond and the testimony of the two State witnesses reflects that the offense for which appellant was required to appear was attempted burglary of a building. Before an accused may be subject to the punishment range allowed for a third degree felony, the offense for which he was required to appear when he jumped bail must be "classified" as a felony. TEX. PEN.CODE ANN. § 38.10. Only the Legislature of the State of Texas has the authority to "classify" offenses, and has classified attempted burglary of a building as a Class A Misdemeanor. The only conflicting evidence presented by the State is the bond and the opinion of two lay-witnesses that the offense of attempted burglary of a building is a felony. Neither of the State's witnesses have the authority to "classify" any offense. Viewing all the evidence without the prism of "in the light most favorable to the prosecution," we must conclude the verdict must be set aside because "it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Stone*, 823 S.W.2d at 381; *Clewis*, 922 S.W.2d at 133.

We must reverse the judgment of the trial court and remand for a new trial. *Clewis*, 922 S.W.2d at 133.