Quincy Bill JACOBS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–04–00109–CR.

Court of Appeals of Texas,
Texarkana.

July 27, 2005.

Donald W. Dowd, Lovelace and Dowd, Inc., Linden, for appellant.

Kaylin Kluge, Assistant District Attorney, Linden, for appellee.

Before MORRISS, C.J., CARTER and

CORNELIUS,* JJ.

## OPINION

CORNELIUS, Justice (Retired).

Quincy Bill Jacobs was tried before the district court for the offense of failure to appear. *See* TEX. PEN. CODE ANN. § 38.10 (Vernon 2003). The court, having found that the offense for which Jacobs' presence was required was a felony, found Jacobs guilty of a felony of the third degree and set his punishment at two years' confinement. *See* TEX. PEN. CODE ANN. § 38.10(f).

On appeal, Jacobs alleges three grounds for reversal:

1. The trial court erred by not granting an "instructed verdict" of not guilty because there is legally insufficient evidence to prove that the offense for which Jacobs' attendance was required was a felony.

2. The trial court erred by allowing evidence of Jacobs' extraneous offenses in failing to appear in other cases.

3. The evidence established as a matter of law that Jacobs had a reasonable excuse for failing to appear when he was required to do so.

We overrule all these contentions and affirm the judgment.

The provisions of Texas Penal Code Section 38.10 that are pertinent here are:

(a) A person lawfully released from custody, with or without bail, on condition that he subsequently appear commits an offense if he intentionally or knowingly fails to appear in accordance with the terms of his release.

. . . .

(c) It is a defense to prosecution under this section that the actor had a reasonable excuse for his failure to ap-

pear in accordance with the terms of his release.

. . . .

(f) An offense under this section is a felony of the third degree if the offense for which the actor's appearance was required is classified as a felony.

TEX. PEN. CODE ANN. § 38.10.

■ Jacobs challenges the legal sufficiency of the evidence to prove that the offense for which he was required to appear was a felony. He cites the case of *Burns v. State*, 958 S.W.2d 483 (Tex. App.—Houston [14th Dist.] 1997, no pet.), to support his position, but that case actually supports the State's position in this case. In *Burns*, the appellant's bond on its face indicated that the appellant was charged with a "felony" and was required to appear in the district court. Two witnesses testified the appellant was required to appear on a felony charge. The court of appeals said that the evidence was legally sufficient to prove that the underlying charge was a felony, even though the appellant's bond also showed on its face and the two witnesses testified that the charge for which the appellant was required to appear was "attempted burglary of a building," which the court noted was classified by the Legislature as a Class A misdemeanor, not a felony. Because of this contradictory evidence, the court held that the evidence was legally sufficient, but factually insufficient to prove the underlying offense was a felony.

The evidence in this case is stronger and clearer than that in *Burns*. Here, Jacobs' bond makes no affirmative statement about the classification of the offense, but it does have an underlining of the word "misdemeanor" that appears on the printed form of the bond. All of the other evidence, however, shows the underlying

* William J. Cornelius, C.J., Retired, Sitting by Assignment

charge against Jacobs was a felony. The district court bailiff testified that Jacobs was required to appear on a felony theft charge. At the defense counsel's request and with the prosecutor's agreement, the trial court took judicial notice of its own records, noting that the docket sheet for the case against Jacobs showed that the case was docketed as a felony.

We find legally sufficient evidence to support the trial court's finding that the offense for which Jacobs was required to appear was a felony. Jacobs has not raised a factual insufficiency challenge on this issue. The trial court did not err in refusing Jacobs' motion for a finding of not guilty.

■ Jacobs also contends the trial court erred in allowing the State to introduce evidence of numerous other failures of Jacobs to appear in court when required to do so, as well as several bond forfeitures in other cases. The trial court found that Jacobs "opened the door" to this evidence when he testified that it was not true that he had a habit of failure to appear, and that he had missed only once and had not had any bond forfeitures. Jacobs' voluntary testimony included the following:

[Prosecutor]: And in this particular case, you were getting pretty close to trial on that case, were you not, with Mr. Verschoyle [Jacobs' previous attorney]?

[Jacobs]: And as I understand, the day I didn't get here, they said somebody stood up and said I'm in the habit of doing this, which that's not true.

[Prosecutor]: That wasn't the question. You were getting pretty close to trial, were you not, before Mr. Verschoyle got out? That week, or shortly, within a couple or three weeks of trial, were you not, on your theft charge? You don't know?

[Jacobs]: No, sir.

[Prosecutor]: Well, since you brought up "in the habit of it," you've missed court a few times in the past, have you not?

[Jacobs]: One other time. I've never had a bond forfeiture.

[Prosecutor]: Never? So if the computer says you've missed seventeen times, it's wrong?

[Jacobs]: Yes, sir.

The trial court did not err in allowing the State to introduce evidence of Jacobs' other failures to appear and bond forfeitures.

■ Finally, Jacobs contends that he established as a matter of law that he had a reasonable excuse for his failure to appear.

Jacobs testified and admitted he knew he was required to attend court on the underlying charge on June 16, 2003, at 1:00 p.m. Jacobs testified that on that day he had no vehicle because his truck was impounded by the police department. He was in Atlanta, some fifteen miles from the courthouse in Linden. He said he left Atlanta at 9:30 a.m. walking on Highway 59 toward Linden trying to hitch a ride. He got one ride, but it took him only a short distance. He was unable to get any other ride. He said he made six telephone calls, three to the district clerk's office and three to the district attorney's office, to tell them he could not get there.

However, Jacobs admitted and there was undisputed testimony from Juanita Watson, Jacobs' bond maker, that Watson and Jacobs had a longstanding relationship, Watson regularly made bonds for Jacobs, and if he ever needed a way to get to court, she would come get him and take him. Jacobs knew he could call Watson at any time and get a ride to court. Jacobs admitted, however, and Watson testified, that he did not try to contact Watson to get her to take him to court, although he

had ample advance notice of the court setting to contact her and get a ride. Furthermore, he testified that he did not telephone the court or district attorney's offices until around three o'clock the afternoon of his appearance day, some two hours after the scheduled time for his appearance.

Considering all this evidence, it is clear that Jacobs did not establish as a matter of law that he had a reasonable excuse for failing to appear. Nor is the trial court's finding that he had no reasonable excuse against the great weight and preponderance of the evidence.

For the reasons stated, we affirm the judgment of the trial court.